UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
Peter St. Laurent                 )
        Plaintiff                 )
                                  )
v.                                )          Civil Action No. 04-11951-NG
                                  )
                                  )
UNITED PARCEL SERVICE, INC. )
        Defendant                 )
                                  )
```

### **UNITED PARCEL SERVICE INC.'S**
### **SEPARATE STATEMENT OF UNDISPUTED FACTS**

United Parcel Service Inc. ("UPS") submits this Separate Statement of Undisputed

Facts in support of its Motion for Summary Judgment. As this is a motion for summary

judgment, the following facts are taken in the light most favorable to the plaintiff. There may

be facts listed below that UPS would challenge if there were a trial, but for purposes of this

motion UPS accepts the following facts:

1.      Peter St. Laurent has worked as a package car driver for UPS for over 25 years.

(Deposition of Peter St. Laurent, ("St. Laurent Depo."), Vol. 1, Tr. 6). The transcript of the

first day of Mr. St, Laurent's deposition is at Tab A to UPS' Record Materials in Support of

its Motion for Summary Judgment and the transcript of the second day is at Tab B.[1]

2.      Package Car Drivers at UPS are represented by the Teamsters Union. (See

Affidavit of Neal Rossi, ¶ 2).

3.      UPS and the Teamsters have entered into a collective bargaining agreement

(the "Collective Bargaining Agreement") that governs the terms of employment for package

---

[1] Unless otherwise indicated, all cited exhibits are attached as Tabs A – H to "UPS' Record Material in Support of its Motion for Summary Judgment."

car drivers like Mr. St. Laurent. (See Affidavit of Neal Rossi, ¶ 2; relevant portions of the Collective Bargaining Agreement are attached as Exhibit A to Affidavit of Neil Rossi).

4.      A Package Car Driver must be able to "deliver and pick up packages at a constant pace during a full work shift." (See document entitled "Essential Job Functions of Package Car Driver" attached as Exhibit B to Neal Rossi Affidavit).

5.      The driver must be able to "lift/lower, push, pull and carry up to 70 pounds." Id.

6.      The essential functions of the Package Car Driver position also include the need to "to bend, stoop, crouch, climb, stand, sit, walk and turn/pivot for up to 9.5 hours per day, 5 days per week." Id.

7.      Accordingly, Mr. St. Laurent described the job of a Package Car Driver during his deposition as involving repeated lifting and carrying of packages varying in weight up to 70 pounds for a single driver and 150 pounds with assistance. (St. Laurent Depo., Vol. 1, Tr. 7-14).

8.      During a single work day, Mr. St. Laurent makes 95 to 110 deliveries and 28 pick-ups (St. Laurent Depo., Vol. 1, Tr. 8). Mr. St. Laurent testified that on average he delivers 230 to 250 packages per day. (St. Laurent Depo., Vol. 1, Tr. 12).

9.      In addition, his job involves carrying packages off his truck and up stairs. (St. Laurent Depo., Vol. 1, Tr. 14-17).

10.      The description contained in the Essential Job Functions of a Package Car Driver is consistent with Mr. St. Laurent's own description of what was expected from a Package Car Driver on any given day. (St. Laurent Depo., Vol. 1, Tr. 26).

11.      In November 2000, Mr. St. Laurent suffered a back injury. (St. Laurent Depo., Vol. 1, Tr. 19).

2

12.     A few weeks later, in early January, 2001, Mr. St. Laurent had a recurrence of his back injury and his physician, Dr. Paul Greiner, placed him out of work. (St. Laurent Depo., Vol. 1, Tr. 20).

13.     After Mr. St. Laurent returned to work for a short period, he again experienced back pain on or about March 26, 2001 and was again placed out of work. (St. Laurent Depo., Vol. 1, Tr. 20).

14.     According to Mr. St. Laurent, at that time "my back was so that I couldn't perform my duties." (St. Laurent Depo., Vol. 1, Tr. 20).

15.     At this point, Mr. St. Laurent was no longer able to perform his job as a Package Car Driver. (St. Laurent Depo., Vol. 1 Tr. 21).

16.     In May, 2001, Mr. St. Laurent returned to work with a physician's note clearing him for work. (St. Laurent Depo., Vol. 1, Tr. 23-24).

17.     UPS exercised its right under the Collective Bargaining Agreement and sent Mr. St. Laurent to a different physician, Dr. Isadore Yablon. (St. Laurent Depo., Vol. 1, Tr. 22-23; see also pp. 52-53 of the Collective Bargaining Agreement attached as Exhibit A, to Neal Rossi Affidavit).

18.     Dr. Yablon determined that Mr. St. Laurent could not lift more than 25 pounds and therefore could not perform the functions of a Package Car Driver. (St. Laurent Depo., Vol. 1, Tr. 21-24; see also Exhibit 1 to St. Laurent Depo., Medical Report from Dr. Isadore G. Yablon dated May 22, 2001, attached as Tab C).

19.     Article 20, Section 3 of the Collective Bargaining Agreement provides a procedure for resolving disputes concerning whether an employee is capable of returning to work. (See p. 53 of the Collective Bargaining Agreement attached as Exhibit A to Neal Rossi Affidavit). The Collective Bargaining Agreement provides that the Union and the company

3

are to agree on a third doctor whose decision "shall be final and binding on the Employer, the Union and the employee." (See Id.)

20.    UPS, the Union and Mr. St. Laurent engaged in this process. (St. Laurent Depo., Vol. 1, Tr. 26-28; see also Exhibit 3 of St. Laurent Depo., letter dated September 12, 2001 from Robert Burke, attached as Tab D).

21.    Mr. St. Laurent ultimately chose Dr. Nason Burden. (St. Laurent Depo., Vol 1, Tr. 28).

22.    On or about October 12, 2001, Dr. Burden examined Mr. St. Laurent and issued a report on October 18, 2001 that hinted that Mr. St. Laurent had permanent work restrictions, but did not give specifics. (See Exhibit 4 of St. Laurent Depo., Medical Report of Dr. Burden dated October 18, 2001, attached as Tab E). Instead Dr. Burden stated in this report that "It is the further opinion of this examiner that…a better effective work effort would be expected if he had some restriction on lifting heavy weights, particularly in a repeated manner or such as is exerted on the lower back with torque twisting function when loaded." (Id.)

23.    Mr. St. Laurent requested that Dr. Burden issue a second report. (See St. Laurent Depo, Vol. 1, Tr. 32).

24.    Dr. Burden issued an addendum to his report on or about November 9, 2001, in which he stated that Mr. St. Laurent could not perform all the functions of his job as a Package Car Driver. (See Exhibit 5 to St. Laurent Depo., Medical Report of Dr. Burden dated November 9, 2001, attached as Tab F).

25.    In or around September 11, 2002, another physician, Dr. Naparstek, examined Mr. St. Laurent. (St. Laurent Depo., Vol. 1, Tr. 33-34).

26.     Dr. Naparstek opined in a letter dated September 11, 2002, that Mr. St. Laurent "was not fit for duty at that time."  (See Exhibit 6 to St. Laurent Depo., Medical Report of Dr. Naparstek dated September 11, 2002, attached as Tab G, emphasis in the original).

27.     Dr. Naparstek suggested that Mr. St. Laurent pursue "an aggressive and supervised training program."  (See Id.).  Mr. St. Laurent did so.  (St. Laurent Depo., Vol. 1, Tr. 35).

28.     Mr. St. Laurent returned to Dr. Naparstek the following month and Dr. Naparstek determined that Mr. St. Laurent could return to work full duty with no restrictions. (See Exhibit 7 to St. Laurent Depo., Medical Report of Dr. Naparstek dated October 9, 2002, attached as Tab. H).

29.     UPS returned him to work on October 14, 2002.  (St. Laurent Depo., Vol. 1, Tr. 36-37).

United Parcel Service Inc.
By its attorneys,

Hugh F. Murray, III, BBO# 557175
Laurie Alexander-Krom, BBO# 637385
Murtha Cullina LLP
99 High Street
Boston, MA 02110
617-451-9300

Certificate of Service
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
Date: 5/31/05   LAK

Date:  May 31, 2005